**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Norbert L. Alcaide,<br><br>                    Plaintiff,<br><br>v.<br><br>Todd Thomas<br>Corrections Corporation of America,<br><br>                    Defendants. | No. CV-11-01162-JAT-JFM<br><br>**ORDER** |

Before the Court is Plaintiff's Motion to Enforce Settlement Agreement (Doc. 29) and Defendants' Motion to Seal Exhibit 1 (Unredacted Declaration of T. Thompson) in Support of Defendants' Response to Plaintiff's Motion Seeking Request for Relief. (Doc. 34). The Court now rules on the Motions.

**I.    Facts**

Plaintiff Norbert L. Alcaide ("Plaintiff") filed a complaint against Defendants Todd Thomas and the Corrections Corporation of America ("Defendants") on June 10, 2011. (Doc. 1). The parties reached a settlement and notified the Court of their agreement on January 23, 2012. (Doc. 21). Based upon the stipulation of the parties (Doc. 27), the Court dismissed the complaint with prejudice on March 5, 2012. (Doc. 28).

On August 17, 2015, Plaintiff filed a "Motion Seeking Request for Relief," claiming he "did not know he was entitled to 'relief sum' stated in his complaint." (Doc. 29). Plaintiff requested ten thousand dollars in punitive damages "which both parties

agreed to settle." (Doc. 29 at 2).[1] On September 11, 2015, Defendants filed a response (Doc. 33), lodged an exhibit in support of their response (Doc. 35), and filed a motion to seal the exhibit. (Doc. 34).

**II.     Analysis**

     **A.     Plaintiff's Motion to Enforce Settlement**

          **1.     Legal Standard**

The Ninth Circuit Court of Appeals recognizes a district court's authority to enforce settlement agreements in litigation pending before it. *See In re City Equities Anaheim, Ltd.*, 22 F.3d 954, 957 (9th Cir. 1994); *Calli v. Near*, 829 F.2d 888, 890 (9th Cir. 1987). State contract law governs whether the parties "reached an enforceable agreement settling the federal and state law claims." *Wilcox v. Arpaio*, 753 F.3d 872, 876 (9th Cir. 2014); *see Botefur v. City of Eagle Point, Or.*, 7 F.3d 152, 156 (9th Cir. 1993) ("a settlement agreement is governed by principles of state contract law . . . even where a federal cause of action is 'settled' ").[2]

In Arizona, "settlement agreements, including determinations as to the validity and scope of release terms, are governed by general contract principles." *Emmons v. Superior Court*, 968 P.2d 582, 585 (Ariz. Ct. App. 1998) (citing *Hisel v. Upchurch*, 797 F. Supp. 1509, 1517 (D. Ariz. 1992)). General contract principles require, at a minimum, an offer, an acceptance, consideration, and adequate specification of terms so that obligations can be ascertained to have an enforceable contract. *Rogus v. Lords*, 804 P.2d 133, 135 (Ariz. Ct. App. 1991). Arizona law requires a mirror image acceptance of an offer to consummate an agreement. *See Clark v. Compania Ganadera de Cananea, S.A.*, 385 P.2d 691, 697 (Ariz. 1963). Thus, the addition of materially different terms to an agreement

---

[1] The Court interpreted Plaintiff's motion as a Motion to Enforce Settlement and issued an order to that effect on September 3, 2015. (Doc. 31).

[2] Because Plaintiff's motion was ambiguous, the Court has not analyzed whether the Court would have the authority to enforce the settlement agreement. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 375-76 (1994) ("[E]nforcement of [a] settlement agreement is for state courts, unless there is some independent basis for federal jurisdiction.").

- 2 -

results in a counteroffer containing the additional terms instead of being treated as an acceptance. *See United Cal. Bank v. Prudential Ins. Co. of Am.*, 681 P.2d 390, 422–23 (Ariz. Ct. App. 1983) (citing *Clark*, 385 P.2d 691).

"It is well-established that before a binding contract is formed, the parties must mutually consent to all material terms. A distinct intent common to both parties must exist without doubt or difference, and until all understand alike there can be no assent." *Hill–Shafer P'ship v. Chilson Family Trust*, 799 P.2d 810, 814 (Ariz. 1990) (en banc). "A manifestation of assent sufficient to conclude a contract is not prevented from doing so because the parties manifest an intention to memorialize their already made agreement in writing." *Rennick v. O.P.T.I.O.N. Care Inc.*, 77 F.3d 309, 313–14 (9th Cir. 1996) (citing Restatement (Second) of Contracts § 27 (1981)). A party "attacking a . . . settlement 'must bear the burden of showing that the contract he [or she] made is tainted with invalidity.' " *Hisel v. Upchurch*, 797 F. Supp. 1509, 1519 (D. Ariz. 1992) (quoting *Callen v. Pennsylvania R. Co.*, 332 U.S. 625, 630 (1948)).

### 2. Discussion

Plaintiff claims to be entitled to ten thousand dollars in punitive damages. (Doc. 29). Plaintiff suggests the parties agreed to this amount in their settlement agreement. (Doc. 29 at 2). Defendants respond by arguing Plaintiff is not entitled to ten thousand dollars and has already received the relief the parties agreed upon. (Doc. 33 at 1). Defendants lodged a copy of the parties' signed settlement agreement, dated March 1, 2012, to support their argument. (Doc. 35-1). Additionally, Defendants lodged an affidavit of T. Thompson (Doc. 35) and a statement from Plaintiff's inmate account (Doc. 35-2) as evidence Plaintiff received the settlement amount provided for in the parties' agreement. (Doc. 35-1). Defendants also submitted a signed affidavit of A. Grijalva as evidence Plaintiff received additional, nonmonetary relief agreed upon by the parties. (Doc. 33-2).

In his motion, Plaintiff states he "is not educated in the law" and claims the "relief of punitive damages of [ten thousand dollars] which both parties agreed to settle." (Doc.

29). In his reply, Plaintiff claims the "[p]arties agreed to settle the case, the suit was dismissed following the settlement. . . . As outlined under [the] settlement [there] must be some kind of relief." (Doc. 36). This could be interpreted to claim that Plaintiff did not understand the terms of the settlement agreement and he believed the agreement included an award of ten thousand dollars.[3] If Plaintiff is making this claim, he fails to explain why he signed the stipulation with the court agreeing to dismiss the case with prejudice. (Doc. 27). Plaintiff also fails to explain why over three years have elapsed between when the case was dismissed and Plaintiff filed this motion. (Doc. 28; Doc. 29).

The parties agreed in writing and signaled their intent to be bound to the terms of the agreement by signing the document. (Doc. 35-1 at 6). There is no evidence the agreement lacked mutual assent. The terms of the settlement agreement are not ambiguous, misleading, or otherwise unclear. (Doc. 35-1). The terms of the parties' settlement agreement (Doc. 35-1) do not provide for Plaintiff to receive ten thousand dollars. "A party to a settlement cannot avoid the agreement 'merely because he [or she] subsequently believes the settlement is insufficient.' " *Hisel*, 797 F. Supp. At 1519 (quoting *Taylor v. Gordan Flesch Co., Inc.*, 793 F.2d 858, 863 (7th Cir. 1986)). Plaintiff has already received the relief agreed upon by the parties in the settlement agreement. (Doc. 35-1). Plaintiff has made no showing why the agreement should now be set aside. Thus, the Court denies Plaintiff's motion. (Doc. 29).

### B.   Defendants' Motion to Seal Exhibit 1

On September 11, 2015, Defendants lodged an unredacted Exhibit 1 (Doc. 35) in support of their reply to Plaintiff's motion (Doc. 33), pursuant to LRCiv. 5.6. The lodged document contains an affidavit of T. Thompson. (Doc. 35). Attached to the affidavit is the parties' settlement agreement, Attachment A (Doc. 35-1) and a statement from Plaintiff's inmate account, Attachment B. (Doc. 35-2). Defendants have also filed a

---

[3] The filings of a pro se plaintiff are generally treated differently than those of a plaintiff represented by counsel. *See Christensen v. C.I.R.*, 786 F.2d 1382, 1384 (9th Cir. 1986) (citing *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (per curiam)) (noting "[t]he Supreme Court has directed federal trial courts to read pro se papers liberally.").

1 motion to seal the lodged exhibit. (Doc. 34). Defendants claim the exhibit and attachments should be sealed because: "(1) the parties agreed to keep the terms of the Settlement Agreement confidential, (2) public policy favors keeping settlement negotiations and agreements confidential in order to encourage settlement, and (3) safety and security concerns unique to the correctional environment favor keeping monetary worth of inmates confidential." (Doc. 34 at 2).

### 1. Legal Standard

The Ninth Circuit Court of Appeals recognizes the authority of district courts to protect confidential settlement agreements. *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1212 (9th Cir. 2002). However, it has long been recognized that the public has a general right of access "to inspect and copy . . . judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978). This right extends to all judicial records except those which have "traditionally been kept secret for important policy reasons." *Times Mirror Co. v. United States*, 873 F.2d 1210, 1219 (9th Cir. 1989). Generally, any analysis regarding a motion to seal begins with a "strong presumption in favor of [public] access." *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003). This presumption is far stronger for dispositive motions than non-dispositive because dispositive motions resolve the dispute in lieu of trial. *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006). Non-dispositive motions and their attachments are often "unrelated, or only tangentially related, to the underlying cause of action." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33 (1984). Therefore, the public's presumption of access is lessened for a non-dispositive motion. *Williams v. U.S. Bank Nat'l Ass'n*, 290 F.R.D. 600, 604 (E.D. Cal. 2013). Thus, a showing of "good cause" under Federal Rule of Civil Procedure 26(c) is sufficient to establish a basis to protect a party's information. *Foltz*, 331 F.3d at 1135.

### 2. Discussion

Defendants argue the Court should seal the Declaration and Attachment A because the parties signed a confidentiality agreement. (Doc. 35 at 2). Absent other

considerations, an agreement to keep a settlement agreement confidential would fail to satisfy the "compelling reasons" standard for dispositive motions. *See Gamble v. Arpaio*, No. CV-12-790-PHX-GMS, 2013 WL 142260, at *5 (D. Ariz. Jan. 11, 2013). However, since the exhibit was attached to Defendant's response (Doc. 33), a nondispositive filing, the "good cause" standard of Fed. R. Civ. P. 26(c) applies. Under this standard and with the facts unique to this case, a different conclusion is reached.

Defendants claim the parties only "reached an agreement because of their understanding that it would be kept confidential." (Doc. 34 at 3). Both public and judicial policy favors the settlement of disputes. *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004) (internal citation and quotation omitted); *Lundy v. Airtouch Commc'ns, Inc.*, 81 F. Supp. 2d 962, 970 (D. Ariz. 1999). The settlement agreement in this case was not part of the judicial record prior to Plaintiff's motion. (Doc. 29). The agreement was provided only to prove Plaintiff is not entitled to the relief he seeks. If courts were to allow plaintiffs to circumvent bargained for confidentiality by filing baseless claims, it would remove an incentive for parties to settle their disputes and simultaneously encourage meritless claims. Balancing the competing interests involved and considering the lessened presumption of public access, the promotion of settlement agreements outweighs the public need for access in this case. Thus, Defendants have demonstrated "good cause" why the unredacted affidavit of T. Thompson (Doc. 35) and the parties' settlement agreement (Doc. 35-1) should be sealed.

Defendants' motion also seeks to seal Plaintiff's inmate account statement (Doc. 35-2), "to protect Plaintiff's safety." (Doc. 34 at 3-4). "A party asserting good cause bears the burden, for each particular document it seeks to protect, of showing that specific prejudice or harm will result if no protective order is granted." *See Foltz*, 331 F.3d at 1130 (citation omitted). Defendants claim that if the settlement amount or Plaintiff's account information becomes known, Plaintiff may be blackmailed, assaulted, or attacked by other inmates. (Doc. 34 at 3-4). Defendants further assert that inmates with knowledge of the settlement agreement or Plaintiff's account information could use the information

to "intimidate or manipulate [their] security personnel or pursue frivolous lawsuits." (Doc. 34 at 4).

The "good cause" standard permits the protection of information that may subject a party to "annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). The risk posed to Plaintiff, in a prison environment, meets this showing. It is likely that public disclosure of Plaintiff's account information or details of the amount of the parties' monetary settlement could expose Plaintiff to "oppression" in the form of violence or exploitation from other inmates. Thus, Defendants have shown good cause why Plaintiff's inmate account statement (Doc. 35-2) should be sealed.

### III. Conclusion

Based on the foregoing,

**IT IS ORDERED** Plaintiff's Motion to Enforce Settlement Agreement (Doc. 29) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' Motion to Seal Exhibit 1 (Doc. 34) is **GRANTED**.

Dated this 15th day of October, 2015.

*James A. Teilborg*
Senior United States District Judge